UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL GORDON COOLEY,

Petitioner,

v.

K. HOLLAND,

Respondent.

No.  2:14-cv-0343 KJN P

ORDER

I.  Introduction

Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner consented to proceed before the undersigned for all purposes.  See 28 U.S.C. § 636(c).  Petitioner challenges his 2012 conviction for attempted burglary, identity theft involving ten or more victims, and identify theft.  Petitioner claims he suffered ineffective assistance of counsel during plea negotiations and at sentencing, in violation of the Sixth Amendment.  After careful review of the record, this court concludes that the petition should be denied.

II.  Procedural History

Petitioner pled guilty to charges of attempted burglary, identity theft involving ten or more victims, and identify theft.  Petitioner admitted to three prison priors.  (August 24, 2012

////

1

Reporter's Transcript ("RT") at 3.)  Petitioner was sentenced to seven years, four months in state prison.

Petitioner did not file an appeal.

Petitioner filed a petition for writ of habeas corpus in the state superior court, in which he claimed that his sentence was disproportionate, and that he sustained vindictive prosecution when after he allegedly accepted a two year sentence offer, but his co-defendant brother refused, the two year offer was withdrawn when petitioner fired his defense counsel ("Bajwa") who was a good friend of the prosecutor ("Clancey").  The petition was denied on August 15, 2013. (Respondent's Lodged Documents ("LD") 1-2.)

On August 16, 2013, petitioner filed a petition for writ of habeas corpus in the California Supreme Court.  (LD 3.)  Petitioner claimed his attorneys were ineffective during plea negotiations and at sentencing.  (LD 3.)  The Supreme Court summarily denied the petition on December 11, 2013, citing People v. Duvall, 9 Cal.4th 464, 474 (1995); and In re Dexter, 25 Cal.3d 921, 925 (1979).  (LD 3-6.)

Petitioner filed the instant petition on January 24, 2014.  (ECF No. 1.)

III.  Background and Facts[1]

According to the Sacramento County Superior Court,

> [t]he court's underlying file for Case No. 12F01741, for an unknown reason, does not contain the original complaint that was filed.[2]   It appears from the minute orders that the complaint

---

[1]  The background for the underlying charges in the Sacramento County Superior Court are taken from its August 15, 2013 order denying the petition.  (LD 2.)  No preliminary hearing was held, and the facts underlying the criminal charges are taken from petitioner's change of plea hearing. (August 24, 2012 RT.)  Because the state record was not compiled in the usual manner (ECF No. 32 at 2 n.1), the undersigned identifies the appropriate RT cite by the date the proceedings were recorded.

[2]  The charging dates for the initial criminal complaints are material because it appears that the subsequent joining of the three cases resulted in all of the reporter's transcripts listing all three case numbers in the caption of each cover page, as well as the introductory paragraph setting forth all three case numbers in every subsequent proceeding (with the exception of August 24, 2012). (See March 19, 2012 RT at 1-2 through August 7, 2012 RT at 1-2.)  The Clerk's Transcript ("CT") for Case No. 12F01741 does not reflect the initial filing date of the complaint, but this omission is not relevant as Case No. 12F01741 was filed first and was the lead case.  Moreover,

originally charged petitioner Michael Cooley with Penal Code § 664/459 attempted residential burglary, Penal Code § 466 possession of burglary tools, Penal Code § 148(a)(1) resisting arrest, and Penal Code § 148.9(a) false identification to a police officer.  It appears that this was probably filed shortly before March 13, 2012, which was petitioner's first court appearance in the case; the court's minute order for this appearance lists Neil Ferrera as the deputy district attorney prosecuting the matter, and lists "Middleton, Michael Gordon" with "Middleton" crossed out and "Cooley, Michael Gordon" interlineated, as the defendant.  The court's file also contains an amended criminal complaint, filed by district attorney Robert Clancey, on July 13, 2012, in which petitioner Michael Cooley is charged with Penal Code § 664/459 attempted residential burglary, Penal Code § 466 possession of burglary tools, Penal Code § 529.3 false personation, Penal Code § 148.9(a) false identification to a police officer, and three Penal Code § 667.5(b) prior-prison-term enhancements for prior terms served for violating Health & Safety Code § 11379(a), Penal Code § 530.5(a), and Penal Code § 459.  His brother James Cooley was charged, as a codefendant, with Penal Code § 182(a)(1) conspiracy to commit burglary, Penal Code § 664/459 attempted residential burglary, Penal Code § 466 possession of burglary tools, and three Penal Code § 667.5(b) prior-prison-term enhancements for prior terms served for violating an Oregon controlled substance statute, Penal Code § 496(a), and Penal Code § 459.  For some unknown reason, petitioner Michael Cooley's name was not included in the second line of Count 1, the conspiracy count, thus it does not appear that under the amended complaint he was charged with conspiracy.

In Case No. 12F02616, on April 10, 2012, deputy district attorney Robert Clancey filed a criminal complaint against a "Robert Martin Livingston a.k.a. Michael Cooley," charging him with two counts of Penal Code § 530.5(c)(3) retention of personal identifying information, three counts of Penal Code § 459 second degree burglary, and five Penal Code § 667.5(b) enhancements for prior terms served for violations of Health & Safety Code § 11379, 18 U.S.C. 1344 bank fraud, Penal Code § 530.5 (two), and Penal Code § 459.  The court's minute orders in the underlying file for the case indicate that the court was not informed that his true name was Michael Cooley until April 18, 2012.

In Case No. 12F02817, on April 23, 2012, a different deputy district attorney filed a criminal complaint charging petitioner Michael Cooley with Penal Code § 459 second degree burglary, Penal Code § 475(c) check fraud, and Penal Code § 530.5(a) possession of personal identifying information.

(LD 2 at 1-2.)

---

petitioner confirms that he was charged on March 12, 2012, in case 12F01741, on April 10, 2012, in case 12F02616, and on April 20, 2012, in case 12F02817 (ECF No. 1 at 14), which dates comport with those discussed by the Superior Court.

1   On August 24, 2012, petitioner entered a no contest plea as to count one of Case No.

2   12F01741, count one of Case No. 12F0616, and count three in Case No. 12F2817.  (August 24,

3   2012 RT at 3, 12-14 .)  Saria provided the following factual bases, respectively:

4   On March 9, 2012, in the early morning hours, petitioner and his brother attempted to

5   break into an inhabited dwelling.  (August 24, 2012 RT at 8.)

6   On February 16, 2012, during a probation search, petitioner was found in possession of

7   identifying information belonging to more than ten people.  (August 24, 2012 RT at 13.)

8   Petitioner used the identifying information of a third party on March 5, 2012, without the

9   third party's consent.  (August 24, 2012 RT at 12.)

10  IV.  Standards for a Writ of Habeas Corpus

11  An application for a writ of habeas corpus by a person in custody under a judgment of a

12  state court can be granted only for violations of the Constitution or laws of the United States.  28

13  U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

14  application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 4 (2010); Estelle v. McGuire, 502

15  U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

16  Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

17  corpus relief:

18  An application for a writ of habeas corpus on behalf of a person in
    custody pursuant to the judgment of a State court shall not be
19  granted with respect to any claim that was adjudicated on the merits
    in State court proceedings unless the adjudication of the claim -
20

21  (1) resulted in a decision that was contrary to, or involved an
    unreasonable application of, clearly established Federal law, as
    determined by the Supreme Court of the United States; or
22

23  (2) resulted in a decision that was based on an unreasonable
    determination of the facts in light of the evidence presented in the
    State court proceeding.
24

25  28 U.S.C. § 2254(d).

26  For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

27  holdings of the United States Supreme Court at the time of the last reasoned state court decision.

28  Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct.

4

38 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529

U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining what law is

clearly established and whether a state court applied that law unreasonably."  Stanley, 633 F.3d at

859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent

may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a

specific legal rule that th[e] [Supreme] Court has not announced."  Marshall v. Rodgers, 133 S.

Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)).

Nor may it be used to "determine whether a particular rule of law is so widely accepted among

the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct.

Id.  Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said

that there is "clearly established Federal law" governing that issue.  Carey v. Musladin, 549 U.S.

70, 77 (2006).

        A state court decision is "contrary to" clearly established federal law if it applies a rule

contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003).

Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

writ if the state court identifies the correct governing legal principle from the Supreme Court's

decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3]  Lockyer v.

Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002

(9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that

court concludes in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly.  Rather, that application must also be

unreasonable."  Williams, 529 U.S. at 412.  See also Schriro v. Landrigan, 550 U.S. 465, 473

(2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

---

[3]   Under § 2254(d)(2), a state court decision based on a factual determination is not to be
overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
presented in the state court proceeding."  Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,
384 F.3d 628, 638 (9th Cir. 2004)).

1   "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

2   'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v.

3   Richter, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

4   Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

5   must show that the state court's ruling on the claim being presented in federal court was so

6   lacking in justification that there was an error well understood and comprehended in existing law

7   beyond any possibility for fairminded disagreement." Richter,131 S. Ct. at 786-87.

8       If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

9   court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford,

10  527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

11  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

12  § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

13  considering de novo the constitutional issues raised.").

14      The court looks to the last reasoned state court decision as the basis for the state court

15  judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

16  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

17  previous state court decision, this court may consider both decisions to ascertain the reasoning of

18  the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

19  federal claim has been presented to a state court and the state court has denied relief, it may be

20  presumed that the state court adjudicated the claim on the merits in the absence of any indication

21  or state-law procedural principles to the contrary." Richter, 131 S. Ct. at 784-85.  This

22  presumption may be overcome by a showing "there is reason to think some other explanation for

23  the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797,

24  803 (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims

25  but does not expressly address a federal claim, a federal habeas court must presume, subject to

26  rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 133 S. Ct.

27  1088, 1091 (2013).

28  ////

6

1    Where the state court reaches a decision on the merits but provides no reasoning to

2    support its conclusion, a federal habeas court independently reviews the record to determine

3    whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v.

4    Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

5    review of the constitutional issue, but rather, the only method by which we can determine whether

6    a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853.  Where no

7    reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

8    reasonable basis for the state court to deny relief." Richter, 131 S. Ct. at 784.

9    A summary denial is presumed to be a denial on the merits of the petitioner's claims.

10   Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012).  While the federal court cannot analyze

11   just what the state court did when it issued a summary denial, the federal court must review the

12   state court record to determine whether there was any "reasonable basis for the state court to deny

13   relief." Richter, 131 S. Ct. at 784.  This court "must determine what arguments or theories . . .

14   could have supported, the state court's decision; and then it must ask whether it is possible

15   fairminded jurists could disagree that those arguments or theories are inconsistent with the

16   holding in a prior decision of [the Supreme] Court." Id. at 786.  The petitioner bears "the burden

17   to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v.

18   Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 131 S. Ct. at 784).

19   When it is clear, however, that a state court has not reached the merits of a petitioner's

20   claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

21   habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462

22   F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

23   A. Positions of the Parties

24   Petitioner alleges that he suffered ineffective assistance of counsel from two different

25   attorneys; first, he claims Bajwa rendered ineffective assistance of counsel during her plea

26   negotiations, depriving petitioner of a two year plea offer.  Second, petitioner claims that his last

27   defense counsel ("Saria") was ineffective based on his failure to file a motion for specific

28   performance of the earlier two year plea offer, and failure to convey the two year offer until the

1  change of plea hearing on August 24, 2012, misrepresenting the actual three year plea offer, and

2  resulting in petitioner being sentenced to seven years and four months in state prison.  In the

3  petition, petitioner sought remand back to the Sacramento County Superior Court for re-

4  sentencing to the original two-year offer in all three cases:  12F01741, 12F02616, and 12F02817.

5  (ECF No. 1 at 13.)  However, in his reply, petitioner clarified that he seeks an order reducing the

6  three year term in Case No. 12F01741 to two years, which would result in a new aggregate

7  sentence of six years, four months.  (ECF No. 34 at 4.)

8       Respondent counters that a fairminded jurist could find fatal to petitioner's argument the

9  fact that the two year plea offer on the attempted burglary case was a package deal, and

10  petitioner's co-defendant on that case refused to accept that deal.  Despite the fact that petitioner

11  "sorely wanted to accept the two-year plea offer," respondent contends that neither petitioner nor

12  his attorneys had the power to accept or extend the two-year offer.  (ECF No. 32 at 13.)  Thus,

13  respondent contends petitioner failed to prove either deficient performance or prejudice, and the

14  petition should be denied.

15       B.  Last Reasoned State Court Decision

16       Because the California Supreme Court summarily denied this claim, there is no reasoned

17  state court decision addressing petitioner's ineffective assistance of counsel claims on the merits.

18  However, although the superior court did not directly deny petitioner's ineffective assistance

19  claims, it indirectly did so by denying petitioner's prosecutorial misconduct claims, on which the

20  ineffective assistance claims alleging ineffective assistance of counsel are partially based.  Thus,

21  pertinent portions of the Superior Court's decision are set forth here:

22         The minute orders for Case No. 12F01741 indicate that early on,
there had been an original offer of a plea bargain for two years in

23  that case, as there is an indication in the entry for April 18, 2012
that defense counsel had asked that the offer stay open at that time;

24  there is no indication as to whether the prosecutor agreed to do so.
The criminal complaint in Case No. 12F02817 was filed thereafter,

25  on April 23,[4] 2012; the criminal complaint in Case No. 12F02616
had been filed a week previously, on April 10, 2012, and as noted

26  above, counsel on April 18, 2012 had also informed the court that

27  _____

28  [4]  April 23 appears to be a typographical error, as the Clerk's Transcript reflects, and the parties
agree that Case No. 12F02817 was filed on April 20, 2012.  (See n.4 and CT at 2.)

1
2
3

   "Michael Cooley" was the defendant's true name in that case. Petitioner's motion under People v. Marsden (1970) 2 Cal.3d 118 was granted on July 9, 2012; there is no indication, however, of whether the offer for two years was still open or had ever been withdrawn, either prior to or after that time.

4

(LD 2 at 2.)  Petitioner entered his plea and was sentenced on August 24, 2012.

5
6
7
8
9
10
11
12
13

   As petitioner was about to be sentenced for the attempted burglary in Case No. 12F01741, defense counsel stated that there had been an offer of eight years and the defense had wanted something less; petitioner stated "I wanted two, accepted two in this very courtroom," and defense counsel explained "What happened was I went downstairs and spoke with [petitioner] and told him that the plea was going to be two, count as described.  I miscalculated I said 6/4 instead of 7/4.  I discussed that with him.  We came back up here and corrected the numbers and spoke with [petitioner] again.  Despite that and we discussed it, he decided he was willing to take it.  But it was my mistake in terms of math calculations in terms of my discussions with him downstairs.  And despite that, he is still willing to take this plea as here.  I just wanted the record to show I did make a math error with him and a misrepresentation, corrected it when we came up here before we took the plea before the Court proceeded in taking the plea.  So there is no issues and questions about any type of errors with [petitioner]."

14

(LD 2 at 3.)

15
16
17
18
19
20

   Petitioner also claims that "on or about April 25, 2013," he and his brother codefendant were originally offered two years in state prison.  He claims that he accepted the offer on the record in open court, but that his brother codefendant refused the offer.  He claims that the offer remained open until the case was reassigned to deputy district attorney Robert Clancey, who was a "good friend" of [petitioner's] defense counsel.  He claims that he then "fired" his defense counsel Bajwa, a motion under [Marsden] . . . was granted, and Clancey then withdrew the plea offer that he claims he had already accepted.   He claims that this constituted vindictive prosecution.

21
22
23
24
25
26
27
28

   Petitioner fails to attach any reasonably available documentary evidence to show that he was offered a two-year plea bargain and that he accepted that bargain, to show the date when Clancey took over as deputy district attorney, that it was Clancey who withdrew the offer, that it was withdrawn by Clancy when petitioner's Marsden motion was granted, that Clancey had a friendship with counsel Bajwa, and that Clancey chose to withdraw the two-year offer specifically because he was upset that the Marsden motion against Bajwa had been granted by the court.   The court's underlying files also do not support his claim, as the file for Case No. 12F01741 shows no court appearance on April 25, 2012 and instead indicates only that on April 18, 2012, his counsel Bajwa stated on the record that Bajwa had just received the case and asked that the offer for two years midterm for then-charged Count 1 be kept open until the preliminary hearing.  Further, the underlying file

for Case No. 12F02616 clearly shows that it was Clancey who had filed the criminal complaint in that case on April 10, 2012, thereby showing his involvement in the prosecutions against petitioner months before petitioner first made a <u>Marsden</u> motion against counsel Bajwa.  As such, petitioner does not show that he ever actually accepted the offer on the record, or that the eventual fizzling out of the two-year offer was related to either Clancey taking over the prosecution or the granting of the <u>Marsden</u> motion, let alone due to anger Clancey purportedly had over the granting of the <u>Marsden</u> motion due to any purported friendship Clancey had with Bajwa.

Furthermore, it appears that the district attorney's office could well have been rethinking its offer of two years for petitioner in Case No. 12F01741, when it had become apparent to the office that petitioner had been engaging in additional criminal behavior and had been charged in three separate cases by three separate prosecutors.  One of the other two cases was filed one week before the minute order entry indicating petitioner's counsel asking that the offer be held open, while the other was filed shortly thereafter.  And, there was initial confusion about the identity of the defendant in the case filed on April 10, 2012, as "Michael Cooley" was initially only the "a.k.a." of the purported real name of the defendant, which was different, and that was not clarified on the record until April 18, 2012; further, that case was originally brought by Clancey, while Case No. 12F01741 was initially brought by deputy district attorney Neil Ferrera and Case No. 12F02817 was initially brought by yet different deputy district attorneys.  In light of these additional cases alleging multiple additional charges, as well as two additional prior-prison-term enhancements beyond those charged in Case No. 12F01741, it would be difficult for petitioner to prove that the withdrawal of the two-year offer, whenever that actually did occur, was due to vindictiveness on the part of Clancey, who had been involved in the prosecution of one of the three cases against petitioner since the beginning, months before the <u>Marsden</u> hearing, and who at some point had taken over for all three cases, or that any such alleged vindictiveness was due to Clancey's purported loyalty to petitioner's counsel who was let go from the case due to conflict with petitioner.  And, as noted above, petitioner has not attached any documentation that supports such a contention.  Indeed, the existing documents in all three case files give no such indication and point to the opposite, that Clancey had been involved in one of the three separate prosecutions, had taken them all over, and had made a combined plea offer that involved all three matters rather than continue to pursue an offer made earlier that had involved only one of the three cases.  That does not evidence vindictiveness in any manner. . . .

Nor does petitioner show that the court would have accepted a plea bargain for two years in Case No. 12F01741, in light of the fact that (1) petitioner was charged with multiple offenses in that case and had three prior prison terms alleged based on prior convictions, and (2) there was a change of circumstances, by petitioner being charged with multiple additional charges in the two new cases.  Under these circumstances, a plea bargain for two years

in Case No. 12F01741 might well have not been viewed as appropriate by the court under the new circumstances. Nor does petitioner show that the other two cases would have been resolved so as to obtain an overall aggregate sentence for all three cases that would have been less than the 7 years 4 months that he did receive in the three cases.

And, petitioner's own counsel set forth on the record, at the change of plea/judgment and sentencing hearing on August 24, 2012, that counsel at that time had initially misinformed petitioner that the plea would involve two years instead of three years for Case No. 12F01741 but that counsel had straightened it out and fully informed petitioner of the terms of the bargain that petitioner was about to enter into and that it involved three years instead of two years for Case No. 12F01741, and that petitioner fully understood and chose to go forward with the plea bargain.

Petitioner did not speak up to inform the court that this was not so, when counsel explained this to the court on the record.

As such, petitioner's second claim [vindictive prosecution] also fails.

(LD 2 at 4-6.)

C.   Ineffective Assistance of Counsel Standards

Petitioner's ineffective assistance of counsel claims were raised for the first time in a collateral challenge to his conviction in the California Supreme Court. The claims were summarily denied by that court. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 131 S. Ct. at 784-85. Petitioner fails to overcome that presumption here because he has not made a showing that "some other explanation for the [California Supreme Court] decision is more likely." Id. at 785. As a result, AEDPA's deferential standard applies to the instant claims. Id.; see also Cullen v. Pinholster, 131 S. Ct. 1388, 1402 (2011) (" Section 2254(d) applies even where there has been a summary denial."). In this situation, petitioner satisfies the "unreasonable application" prong of § 2254(d)(1) "only by showing that 'there was no reasonable basis'" for the state court's decision. Pinholster, 131 S. Ct. at 1402 (quoting Richter, 131 S. Ct at 784).

The clearly established federal law governing ineffective assistance of counsel claims is that set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). To

11

1  succeed on a Strickland claim, a defendant must show that (1) his counsel's performance was

2  deficient and that (2) the "deficient performance prejudiced the defense." Id. at 687.  Counsel is

3  constitutionally deficient if his or her representation "fell below an objective standard of

4  reasonableness" such that it was outside "the range of competence demanded of attorneys in

5  criminal cases." Id. at 687-88 (internal quotation marks omitted).  "Counsel's errors must be 'so

6  serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Richter, 131 S.

7  Ct. at 787-88 (quoting Strickland, 466 U.S. at 687).

8        A reviewing court is required to make every effort "to eliminate the distorting effects of

9  hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

10  conduct from counsel's perspective at the time." Strickland, 466 U.S. at 669.  See also Richter,

11  131 S. Ct. at 789 (same).  Reviewing courts must "indulge a strong presumption that counsel's

12  conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S.

13  at 689.  There is in addition a strong presumption that counsel "exercised acceptable professional

14  judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990)

15  (citing Strickland, 466 U.S. at 689).  This presumption of reasonableness means that the court

16  must "give the attorneys the benefit of the doubt," and must also "affirmatively entertain the

17  range of possible reasons [defense] counsel may have had for proceeding as they did."

18  Pinholster, 131 S. Ct. at 1407 (internal quotation marks and alterations omitted).

19        The Strickland test for demonstrating ineffective assistance of counsel is "applicable to

20  ineffective-assistance claims arising out of the plea process." Hill v. Lockhart, 474 U.S. 52, 57

21  (1985).  Similarly, Strickland applies to counsel's performance and advice during pretrial plea

22  negotiations. Lafler v. Cooper, 132 S. Ct. 1376 (2012).  In this context, prejudice "focuses on

23  whether counsel's constitutionally ineffective performance affected the outcome of the plea

24  process." Hedlund v. Ryan, 750 F.3d 793, 809 (9th Cir. 2014) (quoting Hill, 474 U.S. at 59).  "In

25  other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is

26  a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and

27  would have insisted on going to trial." Hill, 474 U.S. at 809 (footnote omitted); Lafler, 132 S. Ct.

28  at 1385.  However, the Supreme Court also recognizes the difficulty entailed in defining the duty

and responsibilities of defense counsel during plea negotiations:

> "The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision." <u>Premo v. Moore</u>, 562 U.S. ——, ——, 131 S. Ct. 733, 741, 178 L.Ed.2d 649 (2011). Bargaining is, by its nature, defined to a substantial degree by personal style. The alternative courses and tactics in negotiation are so individual that it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process. <u>Cf. ibid.</u>

<u>Missouri v. Frye</u>, 132 S. Ct. 1399, 1408 (2012).

"The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is 'doubly' so." <u>Richter</u>, 131 S. Ct. at 788 (citations omitted). The relevant question is not whether counsel's actions were reasonable, but whether "there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Richter</u>, 131 S. Ct. at 788.

    D. <u>Discussion</u>

Here, the court has reviewed the record to determine whether there was any reasonable basis for the state court to deny relief, and finds that petitioner cannot establish a Sixth Amendment violation with respect to his attorneys' performance during plea negotiations or at sentencing for the following reasons.

First, the record does not reflect that petitioner accepted a two year plea offer on the record. During proceedings on April 18, 2012, Bajwa stated that she "just had an offer conveyed to [her,] which [she] just barely relayed to Mr. Cooley. As [she] understand[s], it is a package deal." (April 18, 2012 RT at 2.) Bajwa then requested that the offer remain open at least through preliminary hearing so she could have adequate time to discuss it with petitioner and see if the case could be resolved. (<u>Id.</u>) Thus, the record reflects that Bajwa conveyed the two year offer to petitioner, and Bajwa then stated on the record that petitioner was "along for the ride," suggesting that petitioner was willing to take the two year offer. However, the proceedings also reflect that the offer was a "package deal," and co-defendant's counsel did not make a similar indication or statement on the record. (April 18, 2012 RT at 2-3) Other parts of the record confirm that "package deal" meant that both petitioner and his codefendant had to plead to two years. During

1    the subsequent <u>Marsden</u> hearing, petitioner concedes he was "waiting for [his] codefendant."

2    (June 28, 2012 RT at 6 [ECF No. 24 at 6].)[5]  This view of the "package deal" is further bolstered

3    by Bajwa's statement at the April 24, 2012 proceedings:  "It's a packaged deal.  As far as I

4    understand, the codefendant does not want to resolve.  That's why the matter got set for prelim."

5    (April 24, 2012 RT at 3.)  Thus, petitioner's inability to accept the two year offer on April 18,

6    2012, was attributable to his co-defendant's decision to plead not guilty.  In any event, petitioner

7    points to no court proceedings where he unequivocally stated on the record that he accepted a two

8    year plea offer.

9         Second, in his reply, petitioner "insist[s] that the two-year offer did include all three

10    cases."  (ECF No. 34 at 2.)  Importantly, during the April 18, 2012 proceedings, prosecutor

11    Burroughs recounted the offer as "mid-term on the attempt[ed] burglary, as charged in Count

12    One, to both [defendants] for two years."  (April 18, 2012 RT at 2.)  The attempted burglary

13    charge is the charge in the lead case, No. 12F01741.  Moreover, the record confirms that the third

14    case, No. 12F02817, was not filed until April 20, 2012, after the April 18, 2012 proceedings took

15    place; thus the initial plea offer could not include charges not yet filed.  Further, it was not until

16    the April 18, 2012 proceedings that Bajwa informed the court that petitioner was the defendant in

17    Case No. 12F02616, which was filed the week before by the last prosecutor, Clancey, not by

18    prosecutor Burroughs.  Petitioner fails to demonstrate that prosecutor Burroughs was even aware

19    of the second complaint in Case No. 12F02616.  Finally, the April 18, 2012 proceedings are not

20    reflected on the case docket for Case No. 12F02616.  (CT at 9.)  For all of these reasons, the

21    undersigned finds that the initial two year plea offer did not include Case No. 12F02817 or No.

22    12F02616.[6]

23

24    _____

[5] As noted by respondent, it appears petitioner has waived the confidential nature of the sealed
25    transcripts from the <u>Marsden</u> hearings by quoting them in his pleadings.  (<u>See</u> ECF No. 27, 34
    *passim*.)

26
[6] Petitioner's reply (ECF No. 34 at 2-3) could be read as a concession to this point, but the
27    conflicting positions in his briefing and his use of conditional language warranted the court's
    evaluation.  Indeed, on the last page of his reply, petitioner states, "The only question is whether
28    or not that two-year offer encompassed all three cases or just 12F01741."  (ECF No. 34 at 4.)

1    Third, petitioner fails to demonstrate that the two year plea offer remained on the table.

2  During the April 18, 2012 proceedings, Burroughs stated that she could not "authorize the prelim

3  deputy," but would make the representations that Bajwa did.  (April 18, 2012 RT at 2-3)  Such

4  statement by Burroughs suggested that the decision regarding the plea was up to the "prelim

5  deputy," but in any event, Burroughs did not, on the record, agree to hold the two year plea open

6  until the preliminary hearing.  In addition, during the June 28, 2012 Marsden hearing, petitioner

7  told the judge:  "the two year plea offer, I said I wanted to take it and she [Bajwa] said it was no

8  good.  I don't know why."  (ECF No. 24 at 5.)  Thus, it appears that at least by June 28, 2012,

9  both Bajwa and petitioner were aware that the two year plea offer had been withdrawn or

10  revoked.  While Bajwa continued to argue that the two year plea offer was still on the table, such

11  argument was advocacy on behalf of petitioner and, standing alone, does not demonstrate the

12  offer remained open.  Because the two year plea offer was withdrawn or revoked by June 28,

13  2012, Saria had no grounds on which to file a motion for specific performance based on the initial

14  plea offer.

15    Fourth, petitioner states Bajwa first appeared for him in early April 2012, and he "met

16  with [her] and advised her that he would probably have some add-book charges and once it was

17  determined that all charges had been lodged, he, petitioner, wanted an offer from the state to

18  resolve his matters without trial."  (ECF No. 1 at 14.)  The proceedings at which petitioner claims

19  he accepted the two year offer were held on April 18, 2012, and petitioner was not charged with

20  the third case, 12F02817, until April 20, 2012.  Thus, by April 18, 2012, all of petitioner's

21  charges had not yet been "lodged," and petitioner fails to demonstrate that Bajwa was aware of

22  such charges by the April 18, 2012 proceedings.  Indeed, at the April 24, 2012 proceedings,

23  Bajwa stated that she didn't have a copy of the discovery or the complaint.  (April 24, 2012 RT at

24  2.)  Moreover, a different prosecutor, Ferrera, appeared for the People.  (Id.)  During the April 24,

25  2012 proceedings, Bajwa recounted her understanding that there was a plea offer on the table that

26  petitioner wanted to accept, but Ferrera noted only "vague familiarity" with the cases, and stated

27  that "if there were some negotiation breakdown, we certainly want to do just one prelim on the

28  prelim date."  (April 24, 2012 RT at 2.)

1    Fifth, by the June 28, 2012 <u>Marsden</u> hearing, Bajwa confirmed her continued efforts to

2    negotiate the two year plea deal for petitioner.  (ECF No. 24 at 8.)  However, by then, Bajwa was

3    negotiating with Clancey, the last prosecutor to the case, in an effort to resolve "this case for the

4    initial two-year offer."  (ECF No. 24 at 9.)  Bajwa explained:

5            I did state the offer on the record.  I did state [petitioner's]
             willingness to resolve the case.  I continue to negotiate with Mr.
6            Clancey.  Thus far, Mr. Clancey has not given me the same offer or
             a  new  offer.    ¶    Mr.  Clancey's  position  has  been,  and  I
7            communicated this to [petitioner], he [Mr. Clancey] wants to review
             all discovery pertaining to [petitioner], not just this case but also his
8            past, his prior, his prior convictions.  He wants to get a sense of
             who [petitioner] is and then determine what sort of offer he's going
9            to extend.  That's where he's been with it.

10   (ECF No. 24 at 9.)  Again, this record demonstrates Bajwa's efforts to obtain the two year plea

11   offer were thwarted by Clancey's failure to confirm that the two year offer remained open, or to

12   provide a new offer.  Moreover, as noted by the state court, working out a plea offer was

13   complicated by the three different complaints filed against plaintiff, as well as the initial failure to

14   accurately name him in one of the complaints.  Indeed, the felony abstract of judgment reflects

15   that petitioner has two aliases:  "Robert Martin Livingston and Michael G. Middleton."  (ECF No.

16   1 at 137.)  Finally, while the record is clear that petitioner wanted a two year plea, and Bajwa was

17   trying to get him such a deal, there is no evidence that the two year plea offer remained open after

18   the April 18, 2012 proceedings.  In any event, by the June 28, 2012 <u>Marsden</u> hearing, the record

19   reflects that Clancey was reconsidering the offer that would be extended.

20           Sixth, petitioner's claim as to Saria's performance during the August 24, 2012 sentencing[7]

---

[7]  In his reply, petitioner raises a new claim that Saria failed to investigate the facts underlying the
attempted burglary charge.  (ECF No. 34 at 3.)  However, such claim was not included in the
instant petition, depriving respondent of an opportunity to respond.  Moreover, the claim was not
included in his petition before the California Supreme Court, rendering the claim unexhausted.
To the extent petitioner is attempting to belatedly raise new claims in the traverse, relief should be
denied.  <u>See</u> <u>Cacoperdo v. Demosthenes</u>, 37 F.3d 504, 507 (9th Cir. 1994) (a traverse is not the
proper pleading to raise additional grounds for relief); <u>Greenwood v. Fed. Aviation Admin.</u>, 28
F.3d 971, 977 (9th Cir. 1994) ("we review only issues which are argued specifically and distinctly
in a party's opening brief").  But even if such claim had been properly raised, petitioner failed to
show prejudice under <u>Strickland</u>.  Petitioner does not demonstrate that but for Saria's failure to
investigate such facts, petitioner would not have accepted the plea offer and would have insisted
on going to trial.  The record makes clear that petitioner was not interested in going to trial, but
was adamant about receiving a plea offer.

1    is refuted by the record where Saria clearly explained his error in calculating the math when he

2    communicated the revised plea offer to petitioner.  (August 24, 2012 RT at 8-9.)  Moreover, Saria

3    confirmed on the record that he had been negotiating with Clancey, and that Clancey wanted an

4    eight year sentence but petitioner wanted a two year sentence.  (Id. at 8.)  Early in the

5    proceedings, Saria noted that he only received Clancey's offer that very morning (id. at 6).  This

6    record confirms that there was no two year offer pending for Saria to accept or to convey to

7    petitioner.

8         Finally, petitioner's claim that Saria was ineffective because he failed to convey the initial

9    two year plea offer to petitioner (ECF No. 1 at 20) is unavailing.  The record reflects that Bajwa

10   relayed the initial plea offer to petitioner on April 18, 2012.  No further conveyance of the initial

11   plea offer was required; the record demonstrates that petitioner was well aware of the initial offer.

12   Moreover, as noted above, the initial two year plea offer was not on the table by June 28, 2012,

13   prior to the dismissal of Bajwa and the appointment of Saria.  The record also reflects that Saria

14   conveyed to petitioner the revised plea offer on August 24, 2012, the same day Clancey conveyed

15   it to Saria.  Petitioner's self-serving claim that Saria promised petitioner that he would only

16   receive a two year sentence (ECF No. 1 at 21-22), is not credible based on his knowing and

17   voluntary plea as evidenced during the plea colloquy on August 24, 2012, where the judge

18   thoroughly explained the counts to which petitioner was pleading no contest, as well as the

19   sentences attached thereto.  (August 24, 2012 RT at 2-5, 6.)  Moreover, as noted by the state

20   court, petitioner registered no objection, either at the change of plea hearing or shortly thereafter.

21        Given all of the above, petitioner fails to demonstrate that there was no reasonable basis

22   for the state court to deny the ineffective assistance of counsel claims, and there are reasonable

23   arguments that both counsel satisfied Strickland's deferential standard.  No fairminded jurist

24   would disagree that such finding comports with Strickland.  The initial two year plea offer was a

25   package deal and the record demonstrates that petitioner's codefendant refused to accept that

26   deal.  In addition, the plea offer expired at least by June 28, 2012, if not before, primarily based

27   on the intervening circumstances of additional charges being brought against petitioner, as well as

28   Clancey joining the three cases together and evaluating all of the charges and petitioner's criminal

1  history.  Petitioner fails to identify what additional steps defense counsel could have taken to

2  obtain a two year plea offer.  Accordingly, petitioner is not entitled to habeas relief.

3  V.  Request for Evidentiary Hearing

4      Petitioner sought an evidentiary hearing.  (ECF No. 1 at 13.)  The undersigned concludes

5  that no additional factual supplementation is necessary in this case and that an evidentiary hearing

6  is not appropriate with respect to the instant claims.  Therefore, petitioner's request for an

7  evidentiary hearing is denied.[8]

8  VI.  Motions for Appointment of Counsel

9      In light of the above, petitioner's motions for appointment of counsel are denied.

10  VII.  Conclusion

11     For all of the above reasons, the undersigned denies petitioner's application for a writ of

12  habeas corpus, and his motions for appointment of counsel.

13     Before petitioner can appeal this decision, a certificate of appealability must issue.  28

14  U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A certificate of appealability may issue under 28 U.S.C.

15  § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional

16  right."  28 U.S.C. § 2253(c)(2).  The court must either issue a certificate of appealability

17  indicating which issues satisfy the required showing or must state the reasons why such a

18  certificate should not issue.  Fed. R. App. P. 22(b).

19     For the reasons set forth above, the undersigned finds that petitioner has not made a

20  substantial showing of the denial of a constitutional right.

21     Accordingly, IT IS HEREBY ORDERED that:

22     1.  Petitioner's application for a petition for writ of habeas corpus is denied;

23     2.  Petitioner's request for evidentiary hearing is denied;

24     3.  The court declines to issue the certificate of appealability referenced in 28 U.S.C.

25  § 2253; and

---

26  [8]    In addition, the Supreme Court has held that federal habeas review to determine whether relief

27  is permitted under 28 U.S.C. §  2254(d)(1) "is limited to the record that was before the state court
    that adjudicated the claim on the merits" and "that evidence introduced in federal court has no

28  bearing on" review under § 2254(d)(1).  Pinholster, 131 S. Ct. at 1398.

1        4.  Petitioner's motions for appointment of counsel (ECF Nos. 34, 35) are denied.

2  Dated:  February 9, 2015

3

4                               KENDALL J. NEWMAN
/cool0343.157                   UNITED STATES MAGISTRATE JUDGE